UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

OCMC, INC.,                          )
                                     )
              Plaintiff,             )
                                     )
       v.                            )   CASE NO. 1:05-cv-1396-DFH-TAB
                                     )
BILLING CONCEPTS, INC.,              )
                                     )
              Defendant.             )

ENTRY ON DEFENDANT'S MOTION TO DISMISS

Plaintiff OCMC, Inc. has brought suit against defendant Billing Concepts,
Inc. ("BCI") for breach and wrongful termination of contracts, violation of Indiana's
antitrust statute, constructive fraud, and injunctive relief.   OCMC is a
telecommunications company that contracted with BCI to have BCI perform billing
services.

OCMC initially filed this suit in state court in Indiana.  Just three days
later, BCI removed the suit to federal court and the next day filed a motion to
dismiss.  The contracts at issue allow either party to insist on arbitration in Texas
to resolve any dispute arising under the contracts.  Accordingly, without delving
at all into the merits of OCMC's allegations of wrongdoing, BCI's motion to dismiss
must be granted.

*Factual Background*

OCMC is an Indiana corporation with its principal place of business in Indiana.  BCI is a Delaware corporation with its principal place of business in Texas.  This court has jurisdiction over the action pursuant to 28 U.S.C. § 1332.

OCMC alleges that it has contracted with BCI for approximately fifteen years to perform telecommunication billing services for OCMC and its end-user customers.  Cplt. ¶ 8.  Five OCMC-BCI contracts are at issue.  *Id.* ¶ 11.  OCMC claims that BCI wrongfully terminated these five contracts (Count III) and breached them by failing to remit certain payments to OCMC (Count IV).  OCMC also claims that certain contract provisions violate Indiana antitrust law, and it seeks a declaratory judgment to that effect (Counts I & II).  OCMC also asserts a claim for constructive fraud (Count V) and a request for injunctive relief (Count VI).

All five contracts contain identical arbitration provisions providing that "all disputes, disagreements, claims or controversies between Customer and Company, including, but not limited to, those arising out of or related to this Agreement, tort claims and claims of violation of statutes" shall be submitted to a dispute resolution process that includes arbitration before the American Arbitration Association in San Antonio, Texas.  Cplt. Exs. C, D, E, F, G.  All five contracts also contain identical forum selection provisions providing that, except for arbitration proceedings, "exclusive jurisdiction and venue over any and all

matters of dispute under or by virtue of this Agreement or between the parties will rest in the state or federal courts located in Bexar County, Texas." *Id.* BCI requests that the court dismiss OCMC's suit on the basis of these provisions.

*Analysis*

I.      *Duty to Arbitrate*

Under the Federal Arbitration Act, a court may compel a party to arbitrate a dispute if the court finds a written agreement to arbitrate, a dispute within the scope of that agreement, and a refusal to arbitrate. *Zurich American Ins. Co. v. Watts Industries, Inc.*, 417 F.3d 682, 687 (7th Cir. 2005), citing 9 U.S.C. § 4. In deciding whether the parties agreed to arbitrate the dispute in question, courts generally apply ordinary principles of state contract law. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Any ambiguities as to the scope of an arbitration clause should be resolved in favor of arbitration because of the federal policy favoring arbitration. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002); *County of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 823 (7th Cir. 2006); see also *Homes by Pate, Inc. v. DeHaan*, 713 N.E.2d 303, 306 (Ind. App. 1999) ("It is well settled that Indiana recognizes a strong policy favoring enforcement of arbitration agreements.").

In this case, all five contracts provide that any disputes or claims "arising out of or related to" each of the contracts, including "tort claims" and "claims of

violation of statutes," should be submitted to arbitration. OCMC's claims in this suit unambiguously fall within the scope of this expansive arbitration provision. See, *e.g.*, *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967) (arbitration provision covering any claim or controversy "arising out of or relating to" agreement was "easily broad enough" to encompass claim of fraud in the inducement); *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909-10 (7th Cir. 1999) (distributor's claim that manufacturer tortiously interfered with employment contract of distributor's employee fell within arbitration provision covering disputes "arising out of or relating to" distributorship agreement, even without specific language concerning tort claims); *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 641, 643 (7th Cir. 1993) (plaintiff's tort claims and claim for rescission under Illinois Franchise Disclosure Act were arbitrable based on "arising out of" language, even without specific language concerning tort claims and statutory violations). OCMC has not attempted to argue that its claims fall outside of the relevant arbitration provisions.

II.    *Waiver of Right to Arbitrate*

OCMC argues instead that BCI has waived its right to arbitrate by filing a separate lawsuit in a Texas state court and by seeking dismissal here without asking this court to compel arbitration. About a month after BCI filed its motion to dismiss in this case, BCI filed suit against OCMC in Texas state court. In that suit, BCI alleged that OCMC sent letters to BCI's customers claiming that BCI was withholding OCMC's funds to support its "dubious financial position" and

describing BCI as having "negative stockholder's equity."  See Pl. Ex. A.  BCI alleged that OCMC's acts amounted to business disparagement and tortious interference.  BCI requested immediate injunctive relief.  The Texas court granted BCI's request for a temporary restraining order.  BCI also was granted a hearing on the merits for permanent relief and damages.

OCMC then removed BCI's suit from Texas state court to the United States District Court for the Western District of Texas.  OCMC filed a motion to quash the TRO while BCI filed a motion to extend the TRO past its expiration date.  The magistrate judge recommended that both motions be denied, and the district court accepted that recommendation.  In the course of denying BCI's motion, the court stated that the contractual arbitration provisions were broad enough to encompass the claims in this suit as well as BCI's claims in Texas.  It therefore viewed BCI's position in this case as "facially inconsistent" with its request for relief in the Texas litigation.  Pl. Second Supp. Auth., Tab A.

The Seventh Circuit evaluates waiver of a right to arbitrate the same way that it evaluates waiver of any other contract right.  *St. Mary's Medical Center of Evansville, Inc. v. Disco Aluminum Products Co., Inc.*, 969 F.2d 585, 590 (7th Cir. 1992) (affirming finding that party waived right to arbitrate by participating in litigation for ten months, including receiving adverse ruling on motion to dismiss or for summary judgment).  In deciding whether a party has waived its right to arbitrate, the court must consider the totality of the circumstances.  The essential

question is whether the party has acted inconsistently with the right.  *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004), citing *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 757 (7th Cir. 2002); see also *MPACT Construction Group, LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 910 (Ind. 2004).

A party's diligence in seeking arbitration weighs heavily in deciding whether it has waived its right to arbitrate.  *Sharif*, 376 F.3d at 726, citing *Baker O'Neal Holdings*, 304 F.3d at 757.  In this case, BCI has been diligent and prompt in attempting to enforce a right to have these claims resolved by arbitration rather than in court.  OCMC filed this lawsuit on September 16, 2005.  BCI removed the suit just three days later and filed its motion to dismiss the very next day.  BCI has not filed an answer or issued any discovery in the case.  In sum, BCI has not "manifested an intention to resolve the dispute through the processes of the federal court."  *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995) (defendant waived right to arbitrate by removing case to federal court and then waiting eight months to request order to arbitrate); see also *Sharif*, 376 F.3d at 726-27 (reversing denial of motion to compel arbitration where motion was filed 18 months after lawsuit was filed but before merits had been addressed in court).

BCI's initiation of the separate lawsuit in Texas is not inconsistent with its right to arbitrate the claims asserted by OCMC in this suit.  In general, choosing

to resolve a dispute through a judicial forum creates a presumption of waiver. *Cabinetree*, 50 F.3d at 390. But courts have reasoned that a party does not waive its right to arbitrate certain claims by engaging in litigation on other claims not involving the same legal and factual issues. See *Grumhaus v. Comerica Securities, Inc.*, 223 F.3d 648, 652 (7th Cir. 2000) ("We agree that different claims may arise from a common factual basis, and that in one claim, a party may wish to waive arbitration while preserving that right in the other."); *Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 332 (7th Cir. 1995) (arbitrator did not exceed power by resolving claims that involved issues different from earlier suit in state court); accord, *Doctor's Associates, Inc. v. Distajo*, 107 F.3d 126, 133 (2d Cir. 1997) ("only prior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate"); *Commercial Union Ins. Co. v. Gilbane Bldg. Co.*, 992 F.2d 386, 390-91 (1st Cir. 1993) (plaintiff did not waive its right to arbitrate defendant's counterclaims where plaintiff's own claims filed in court did not involve identical factual and legal issues).

"A contrary approach would 'effectively abrogate an arbitration clause once a party had litigated *any* issue relating to the underlying contract containing the arbitration clause' in contravention of the federal policy favoring the enforcement of arbitration agreements." *Gidatex, S.R.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 420, 427 (S.D.N.Y. 1998) (by pursuing claims for trademark infringement and unfair competition in court, plaintiff waived its right to compel arbitration of defendant's closely related counterclaims for unfair competition,

misappropriation, and unjust enrichment, but did not waive its right to arbitrate claim for breach of contract that presented different legal and factual issues), quoting *Doctor's Associates*, 107 F.3d at 133 (emphasis in original).

In *Grumhaus*, the Seventh Circuit considered whether parties requesting arbitration had implicitly waived that right by bringing a previous action in state court, which they had already lost on the merits.  223 F.3d at 650-52.  The plaintiffs charged with waiver argued that the earlier state court action involved causes of action different from those they sought to arbitrate.  The court rejected that formulation of the test and held that a party could not "escape the effect of its waiver by minimally restyling the claim and presenting it for arbitration." *Id.* at 652.  Instead, the court stated that the test was whether the litigation and arbitration presented the "same issues." *Id.*, citing *Gingiss*, 58 F.3d at 332.  The court concluded that the plaintiffs in *Grumhaus* had waived their right to arbitrate because the state court action and the requested arbitration involved the same issue (whether the defendant had wrongfully liquidated stock belonging to plaintiffs), the choice of remedies was the same, and favorable resolution of one dispute would preclude recovery in the other.  223 F.3d at 652-53.

In this case, BCI has not waived its right to arbitrate the claims in this suit. It sought to enforce the arbitration clauses in this action before it filed its Texas lawsuit, and BCI's  claims in the Texas lawsuit involve different legal and factual issues.  The dispute in this court concerns the rights and duties of the parties

under five long-term business contracts.  The Texas litigation, on the other hand, concerns OCMC's alleged very recent contacts with BCI's customers and the reputational and business harms allegedly caused by those contacts.  Resolution of either dispute does not preclude recovery in the other, and the remedies sought by the parties are quite different.  Although the federal court in Texas viewed BCI's request for arbitration in this case as "facially inconsistent" with its participation in litigation there, the court's comments were made in the context of BCI's request to extend its TRO.  The court was not asked to resolve and did not resolve the waiver issue presented here.

Most cases finding waiver involve a party that participates in litigation and then at some *later* time seeks to arbitrate a similar dispute.  In such cases, courts seek to discourage parties from forum-shopping, from "taking a case to the courts and then, if things go poorly there, abandoning . . . suit in favor of arbitration." *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 637 (7th Cir. 2002); accord, *Grumhaus*, 223 F.3d at 651 (finding waiver to arbitrate issues plaintiffs had already litigated and lost in state court); *St. Mary's Medical Center*, 969 F.2d at 589 (finding waiver to arbitrate by defendant after participating in litigation for ten months and motion to dismiss or for summary judgment was denied).  In this case, BCI moved to dismiss this suit *before* it filed suit in Texas.  It did not engage in the type of forum-shopping that the waiver doctrine aims to prevent.  Especially in light of the national policy favoring arbitration, the court sees no basis for finding that BCI has waived its right to arbitrate on the basis of litigation that both

came later and involves different legal and factual issues.  *E.g.*, *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983) ("as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself *or an allegation of waiver*, delay, or a like defense to arbitrability") (emphasis added), superseded by statute on other grounds, *Bradford-Scott Data Corp., Inc. v. Physician Computer Network, Inc.*, 128 F.3d 504, 506 (7th Cir. 1997) (noting that 9 U.S.C. § 16(b)(1) prohibits interlocutory appeal of decision to grant stay of action for arbitration).

OCMC also argues that BCI has waived its right to arbitrate by filing in this action a motion to dismiss rather than to compel arbitration.  OCMC argues that BCI has no intention to arbitrate this dispute but seeks only to stall the dispute resolution process in order to retain OCMC's money for a longer period of time.

Ordinarily, when a court finds that a dispute falls within the scope of a valid agreement to arbitrate, the proper course of action under the FAA is not to dismiss the case but to stay judicial proceedings and to compel arbitration.  See 9 U.S.C. §§ 3, 4; *American Patriot Ins. Agency, Inc. v. Mutual Risk Mgmt., Ltd.*, 364 F.3d 884, 890 (7th Cir. 2004); *Geiger v. Ryan's Family Steak Houses, Inc.*, 134 F. Supp. 2d 985, 993 (S.D. Ind. 2001); cf. *Indiana CPA Society, Inc. v GoMembers, Inc.*, 777 N.E.2d 747, 752 (Ind. App. 2002) (under Indiana law, court may exercise discretion in deciding whether to dismiss or stay litigation after issuing order to

-10-

compel arbitration as required by state statute).   BCI has not requested specifically that relief.

The problem with OCMC's argument is that this court could not order arbitration in this case.  The five contracts provide for arbitration in San Antonio, Texas.  The FAA prohibits a court from compelling arbitration outside the confines of its district.  *Continental Casualty Co. v. American Nat'l Ins. Co.*, 417 F.3d 727, 733, 735 (7th Cir. 2005) (affirming dismissal where forum selection provisions required arbitration in other jurisdictions); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995) ("this Circuit has concluded that where the arbitration agreement contains a forum selection clause, only the district court *in that forum* can issue a § 4 order compelling arbitration") (emphasis in original).  Accordingly, the proper course of action here is to dismiss OCMC's claims without prejudice.[1]

---

[1]BCI points out that OCMC's claims are also subject to the general forum selection provisions found in the five relevant contracts.  Those provisions state that, except for the arbitration proceedings provided for by the contracts, "exclusive jurisdiction and venue over any and all matters of dispute arising under or by virtue of this Agreement or between the parties will rest in the state or federal courts located in Bexar County, Texas."  This language encompasses OCMC's claims and also provides grounds for dismissal of this suit without prejudice.  See *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006) (affirming dismissal of suit under Federal Rule of Civil Procedure 12(b)(3) based on mandatory forum selection clause).

III.   *Merits of Arbitrability*

OCMC raises two final arguments in opposing BCI's motion to dismiss. First, OCMC argues that BCI's motion should be denied because BCI has "repeatedly repudiated" other terms of the contracts at issue while at the same time it seeks "specific performance" of the arbitration and forum selection provisions. OCMC cites *SCI Indiana Funeral Services, Inc. v. D.O. McComb & Sons, Inc.* for the proposition that a party seeking specific performance under an agreement first must show that it has substantially performed its contractual obligations. 820 N.E.2d 700, 707 (Ind. App. 2005) (plaintiff's non-performance for seven years under antitrust settlement agreement prevented it from seeking specific performance against other contracting party's successor). OCMC argues that BCI has repudiated its contracts by failing to remit certain payments it received in 2005 from OCMC's customers.

The argument conflicts with the very foundation of arbitration of contract disputes. The central purpose of an arbitration provision is to resolve claims of breach of contract. If a party could avoid arbitration simply by arguing that the other party had breached the contract, few arbitration provisions would ever be enforced. See, *e.g.*, *Sweet Dreams*, 1 F.3d at 642 ("We find . . . that 'arising out of' reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se.") (emphasis omitted). BCI is entitled to have this dispute resolved via the procedural mechanisms agreed to by the parties.

-12-

Second, OCMC argues that even if the court finds that the relevant arbitration and forum selection provisions are applicable and have not been waived, the court nevertheless should retain jurisdiction to conduct limited discovery on its assertion that the provisions are invalid and unenforceable because they are unconscionable.

Because ordinary contract principles apply in enforcing arbitration agreements, an agreement to arbitrate is not enforceable if it is unconscionable. Both parties have cited Indiana law on this issue.  Under Indiana law, an agreement to arbitrate is unconscionable if "no sensible man not under delusion, duress, or in distress would make [it], and . . . no honest and fair man would accept [it]" and there exists "a great disparity in bargaining power which led the weaker party to sign the contract unwillingly or unaware of its terms."  *Geiger*, 134 F. Supp. 2d at 997, citing *Weaver v. American Oil Co.*, 276 N.E.2d 144, 146 (Ind. 1971); see also *Precision Homes of Indiana, Inc. v. Pickford*, 844 N.E.2d 126, 132 (Ind. App. 2006).  Similarly, a forum selection provision will be enforced only if it was freely negotiated, is reasonable and just under the circumstances, and there is no evidence of fraud or overreaching such that the agreeing party, for all practical purposes, would be deprived of a day in court.  *Dexter Axle Co. v. Baan USA, Inc.*, 833 N.E.2d 43, 48 (Ind. App. 2005); see also *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006) (rejecting challenge to forum selection clause found in "somewhat sophisticated" business deal where there was no showing that clause itself was obtained by fraud).

-13-

At this stage, OCMC has offered no evidence or even specific allegations to support its theory of unconscionability.  OCMC's own executives, officers, and lawyers were involved in negotiating and executing the contracts with BCI.  If there were a factual basis for the challenge, it should be readily available to OCMC.  Neither has OCMC identified what it hopes to learn from discovery on this issue.  Instead, OCMC argues generally that BCI is a "monopoly" with "superior bargaining power" in a market for billing services for local exchange carriers (LECs, in modern telephonese) and that OCMC was forced to accept BCI's form contracts on a "take it or leave it" basis.[2]  OCMC also argues that certain provisions of the contracts are facially unfair, such as the provision requiring a waiting period before OCMC may request arbitration and the provision requiring OCMC to pay BCI's attorney fees in litigation.

Although "courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract,'" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985), courts also must exercise caution when confronted with unsupported claims of unequal bargaining power.  See, *e.g.*, *Precision Homes*, 844 N.E.2d at 132 (rejecting unconscionability challenge to arbitration provision by party represented by

_____

[2]The claims of monopoly power and market share are based in part on a BCI press release claiming that BCI and its affiliates "capture about 85% of the LEC billing market."  Cplt. Ex. A.  The court expresses no view on the viability of this market for purposes of OCMC's state law antitrust theory.

counsel during contract negotiations); *Dexter Axle Co.*, 833 N.E.2d at 49 (enforcing forum selection provision where complaining party offered no evidence to rebut presumption under Indiana law that contracts represented freely negotiated wishes of both parties).

OCMC's own pleadings show that OCMC is a sophisticated business entity that provides "telecommunication services to millions of telephone and internet consumers in the United States and Canada." Cplt. ¶ 6.  OCMC alleges that it has service contracts with approximately 3,000 vendors.  *Id.* ¶ 7.  OCMC  also alleges that it has contracted with BCI for approximately fifteen years.  *Id.* ¶ 8.  Each of the five contracts at issue in this suit was executed by a high-ranking member of OCMC's management.  There is no claim or indication that OCMC did not understand the contracts at the time of their execution or that it agreed to the contracts under circumstances implicating duress or fraud.  Further, the employer-employee cases cited by OCMC are readily distinguishable.  See, *e.g.*, *McCaskill v. SCI Management Corp.*, 298 F.3d 677, 680 (7th Cir. 2002) (holding arbitration clause unenforceable where defendant conceded at oral argument that it would be so if construed to limit plaintiff's ability to recover attorney fees from former employer in Title VII action); *Baugher v. Dekko Heating Technologies*, 202 F. Supp. 2d 847, 849-50 (N.D. Ind. 2002) (denying motion to dismiss or compel arbitration pending limited discovery on unconscionability of arbitration agreement with cost-splitting provision applied to plaintiff's FMLA claim against former employer; information was needed on costs of arbitration and plaintiff's

ability to pay to determine whether provision prevented plaintiff from effectively vindicating federal statutory rights in arbitral forum).

*Conclusion*

OCMC's claims in this dispute are subject to valid and enforceable arbitration and forum selection provisions.  BCI's motion to dismiss (Docket No. 7) is granted and OCMC's claims are dismissed without prejudice.  Final judgment shall be entered accordingly.

So ordered.

Date: May 3, 2006

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Dina M. Cox
LEWIS & WAGNER
dcox@lewiswagner.com

Daniel Ryan Roy
BAKER & DANIELS
drroy@bakerd.com

John Carl Trimble
LEWIS & WAGNER
jtrimble@lewiswagner.com

Joseph H. Yeager, Jr.
BAKER & DANIELS
jhyeager@bakerd.com